CLACK v. STANDEFER et al. No. 1.—147 S. W. (2d) 764.

Eastern Section. August 3, 1940.

Petition for Certiorari denied by Supreme Court, February 1, 1941.

Thach & Thach, of Chattanooga, for appellants.
Chas. C. Moore, of Chattanooga, for appellee.

AILOR, J.   W. H. Clack filed his original bill in this cause for the purpose of having a deed executed by him declared to be a trust deed, and for an accounting with defendants for rents and profits on said real estate so conveyed by said deed and for other items.   It disclosed that the said W. II. Clack had been clerk and master of the Chancery Court of Sequatchie County, Tennessee; that he was short in his account of trust funds in his hands as such clerk and master in March, 1933, and that he executed the deed of conveyance in question to indemnify defendants who were sureties on his official bond as such clerk and master.   Defendants denied the principal allegations of the original bill, and set up the claim that the deed was a straight warranty deed, conveying to them a fee simple title to the land in question.   They denied his right to an accounting or to any other relief in the cause.

Upon the hearing of the cause the Chancellor found and held that the deed in question was a trust deed only and not a fee simple deed. On the basis of this conclusion he ordered an accounting of rents and profits, and the cause was referred to the master for a report. Numerous exceptions were filed by parties complainant and defendants to the report of the master, and same was modified in many particulars by the decree of the Chancellor.   The net result of which was to find defendants slightly indebted to complainant.   He also declared a deed of foreclosure of a trust deed executed by said Clack to secure an indebtedness to the bank a nullity, and set same aside as a cloud upon the title of complainant.   Defendants preserved exceptions to the decree, prayed and perfected their appeal to this court therefrom and have assigned errors herein.   Complainant has also filed assignment of errors.

W. H. Clack had served as clerk and master of the Chancery Court of Sequatchie County for six years prior to March 9th, 1933.   About the time for appointment of his successor it developed that he would not be able to make settlement of all funds charged to him as such clerk and master.   A superficial examination of his office indicated that the shortage would amount to something like $2,300.   When this information reached the sureties on his bond they became considerably exercised.   Complainant tried to raise the necessary amount to settle

558

his obligations as clerk and master, but found himself unable to do so on account of the fact that all banks were closed at the time and money was difficult to obtain. In this extremity he was requested to turn over his property to his sureties, and he executed the deed in question under these circumstances. He says he executed the deed of conveyance for the purpose of security and not with any intention to convey a fee simple title. The deed, exclusive of the description, is as follows:

"Whereas, W. H. Clack, as Clerk and Master of Sequatchie County has defaulted in the amounts of One Thousand ($1,000.00) Dollars for monies due Jamie Ruth Barker Shaffer, and probably other amounts due other people and the State of Tennessee and Sequatchie County, the amount being yet undetermined, and whereas, J. B. Johnson, R. E. Standefer, G. A. Standefer and J. H. Heard are sureties on the bond of the said W. H. Clack, Clerk & Master, and are at will be held liable for any shortage that might be ascertained, including the one Thousand ($1,000.00) Dollars of Jamie Ruth Barker Shaffer's after a check of the books in the office are made and whereas, the said bondsmen will be required to pay and all of said shortage, when the amount is finally determined, and the said W. H. Clack being desirous of protecting his said bondsmen and holding them harmless.

"Now, therefore, in consideration of the above premises and the further consideration of the grantees assuming the payment of one Nine Hundred ($900.00) Dollars note, payable to the Sequatchie County Bank, dated August 13, 1932, we, W. H. Clack and wife, Irene Clack, have this day bargained and sold, and do hereby transfer and convey unto the said R. E. Standefer, G. A. Standefer, J. H. Heard, and J. B. Johnson, the following described real estate, situated in the fourth Civil District of Sequatchie County, Tennessee, . . .

"To Have and To Hold unto the said R. E. Standefer, G. A. Standefer, J. H. Heard and J. B. Johnson, their heirs and assigns for ever in fee simple. We covenant that we are lawfully seized and possessed of said property, have a good and lawful right to sell and convey the same, and that it is free and unincumbered, except for one note dated August 13, 1932, payable to the Sequatchie County Bank in the sum of Nine Hundred ($900.00) Dollars, said note secured by a deed of trust, conveying said property to J. H. Heard, Trustee, said indebtedness the above named grantees agree to assume."

In addition to the deed for the real estate in question complainant turned over to his bondsmen promissory notes upon which they collected, according to the findings of the Chancellor, the sum of $1,303.65. And while defendants insist that they were to have a fee simple title to the real estate, they make no such insistence with reference to the notes turned over to them. They content themselves with saying that the notes were turned over to them, though they do not offer to account for the proceeds of the notes.

■ We are unable to see how it can be successfully insisted that · the conveyance of the real estate and the delivery of these notes are to be otherwise than as security or a means of indemnifying defendants for any possible loss that they might incur as a result of their surety-ship on his official bond. The Chancellor found and held that the deed was executed for the purpose of providing security against such loss, and that while it might appear to convey an estate in fee, it was the obvious intention that it should be security only. We think a careful consideration of all of the facts and circumstances surround-ing the making of this deed leads inevitably to this conclusion. It is true that the deed has some of the characteristics of a conveyance in fee. But at the time it was made complainant was not indebted to the grantees in any amount. Such obligation as they had incurred was conditional, and indefinite as to amount. It is not insisted that the bondsmen agreed to pay all of his shortage in consideration of the conveyance. In fact it is not insisted that they made any new agree-ment as an inducement or consideration for the conveyance. Com-plainant voluntarily made the conveyance, in which it is recited that complainant had defaulted as clerk and master, and that defendants as his bondsmen would be required to pay any and all amounts found to be due, and that complainant, being desirous of protecting his said bondsmen and holding them harmless, conveyed the property in question. Protection of the bondsmen was the primary object of the conveyance, and we will not presume that any of the parties had any other objective in mind at the time than protection from possible liability on the bond. Therefore, protection from loss is all that they were entitled to in equity and good conscience.

■ The court will take judicial notice of the financial conditions at the time the deed was made, and the circumstances under which many people found it necessary to adjust their financial affairs. Complainant appears to have been a victim of financial conditions for which he was most likely not all together responsible. Both he and defendants became greatly exercised about possible conse-quences, and he appears to have been willing to do anything to make whole those who had guaranteed his official acts. He took such steps as he thought necessary for this purpose, but he was not under any duty to do more than make them whole, and they were not entitled to any further claim than this. We think this was all that was intended under the circumstances, and concur in the findings of the Chancellor that this was the intention of the parties, as ex-pressed in the deed, when taken in conjunction with the surrounding circumstances and the condition of the parties at the time of its execution. We would not impute to defendants an intention or desire to make a profit out of the misfortunes of complainant.

There is some proof in support of the contention that the convey-ance in question was to be a straight warranty deed, but we think

this was not the real intention of the parties at the time it was drawn so far as their mutual understanding was concerned. It is certain that complainant was so distressed at the time that he was unable to give due consideration to his acts. He faced a possible criminal prosecution added to the stigma of an official defaulter. He had therefore sustained the reputation of a good citizen and a trusted public official, and it was only natural for him to have been greatly agitated. But he continued to reside in the property in question long after the deed was made without any question being made about possession. And question of possession does not seem to have been made until the hurried foreclosure of the trust deed, which the Chancellor held to be void for lack of proper advertisement. When taken in the light of all surrounding circumstances we think the proof preponderates in favor of the decree of the Chancellor to the effect that the real intention of the parties was that the deed was to be treated as a trust deed to secure defendants as bondsmen of complainant. Assignment of error in this connection will be overruled.

It is next insisted that the Chancellor erred in setting aside the trustee's deed from J. H. Heard, trustee, to J. B. Johnson and R. E. Standefer on the ground that same was not properly advertised. The advertisement of the foreclosure sale was by printed posters only. The trust deed contained no provision relative to advertisement, so that the statutory method of advertisement was applicable to the sale. By Section 7793 of the Code it is provided that parties selling land in a fiduciary capacity shall advertise such sale at least three different times in some newspaper published in the county where the sale is to be made, except in cases covered by Section 10535. It is not insisted that Section 10535 is involved in the case. Though it is insisted that the sale was neither voidable nor void, by reason of the provisions of Section 7800 of the Code. We think it makes little difference in this case whether the trustee's deed was void, voidable or not on account of failure to advertise as provided by the statute. Under the circumstances we think J. B. Johnson and R. E. Standefer took title to the property at the foreclosure for the benefit of complainant. They were in a fiduciary relation to him in view of the fact that they had taken the trust deed for their own security in which they had agreed to discharge the very obligation in question. They would not be permitted to foreclose, or procure the foreclosure of the deed of trust held by the bank, and profit by such foreclosure, when they had taken another trust deed in which they had agreed as a part of said trust deed that they would discharge the obligation to the bank. In doing so they would violate their agreement, and it will not be presumed that they intended to violate their said agreement, but it will be presumed that they took title to the land at the foreclosure for the use and benefit of complainant.

After the Chancellor had found that the original deed from Clack and wife to defendants was in the nature of a trust for securing the

bondsmen and making them whole on account of anticipated payments to be made by them as a result of Clack's default, and after he had voided the foreclosure deed and the intermediate conveyance of the property passed thereby, an accounting was ordered and the cause was referred to a special master. Upon the incoming of the report of the special master numerous exceptions were filed by the respective parties. As a result the report of the special master was nullified to such an extent that the Chancellor proceeded to state a new account. The account of the Chancellor so stated is attacked by both parties in various particulars.

It is insisted on behalf of defendants that the Chancellor erred in charging J. B. Johnson with $168.42 in rents collected, it being insisted that he should have been charged with $109.50. In this connection it might be observed that there is proof which would have supported a much larger charge than that found by the Chancellor to be due. It is sufficient to say that there is an abundance of proof to support the charge, and this assignment will be overruled. It is further insisted that the Chancellor erred in failing to charge complainant with the full amount of $697.92, for which they had obligated themselves to pay Sequatchie County. Complainant has assigned error on this same item and the two assignments will be treated together hereinafter.

The first error assigned by complainant is that the Chancellor charged defendants with having collected on the Thaxton note $1,002.50, when he should have charged them with having collected the sum of $1,055 on same. We think this assignment is well taken. The answer of defendants admits that the amount claimed was collected. It is true that Dr. Standefer testified that a less amount than that admitted in the answer was collected, but he is very uncertain as to this item, indicates that he is testifying from memory, and not from any record. His testimony is not sufficient to overcome the admission in the answer. No attempt is made to show that the admission in the answer was an inadvertence or that it was made through mistake. It must be accepted as the amount collected on this note.

It is next insisted that the Chancellor erred in charging complainant with amounts paid on a note for $697.92, executed by the defendants to W. J. Harwood, County Judge of Sequatchie County. After this suit had been pending for a considerable time, and after defendants had notice that they would have to account for their handling of the matters involving complainant, J. B. Johnson, J. H. Heard and Dr. R. E. Standefer executed the note in question. The items entering into this note were, court costs $491.86, county tax $83.36, state tax $22.88, and a penalty of 15%. This appears from the agreed testimony of Judge Harwood, who says the items were taken from the auditor's report. A reference to the auditor's report indicates that complainant was charged with delinquent tax collections

amounting to $120.36, court cost $15.75, trust funds and cost $3,139.67, together with penalty of 15% on the total. All of these amounts were paid by defendants to the clerk and master, J. H. Heard. And since the items were taken from the auditor's report, it is obvious that they had already been paid at the time the note was given to the extent that they were reflected in the report. The item of $491.86, Court costs, is not fully explained. Complainant would be liable only for costs due the clerk and master, unless he had collected them and had not paid them over, which is not claimed. He testifies that he had paid over all costs due the clerk and master which he had collected, and he is corroborated in this by John C. Moore, County Judge. So that the items included in the note do not appear to be properly chargeable to complainant. There is a further circumstance in this connection which is very significant. The Chancellor charged complainant with payments made on this note by Heard and Johnson, but did not charge him with the obligation which Standefer had assumed, and for which he was liable, if there was any legal liability. Standefer does not complain of this action. We are of opinion that the proof does not establish this note as a legal liability against the complainant. And since the note was executed under the circumstances shown, we think it was improper to allow credits for amounts paid.

Both parties complain about the items of rent collected by defendants and charged by the Chancellor. There is a wide divergence in the contentions of the parties in this connection. And while it is true that there is proof in the record from which it could have been concluded that much more rent should have been charged to defendants, still we think the Chancellor reached an equitable conclusion in this connection. After all complainant was primarily to blame for the expensive controversy which has arisen between himself and his former friends and bondsmen. It may be true that he was a victim of circumstances to some degree, but it is unquestionably true that he did not give the duties of his office the attention that he should have done. It became necessary for his bondsmen to pay obligations which should have been paid by complainant before they were compelled to pay them. He executed the deed, which defendants apparently considered a warranty deed. They were treating the property as their own and seem not to have considered the possibility that they would be called to account for rents on same. As a result it is possible that they were not as careful to collect the last dollar of rent that they might otherwise have collected. The Chancellor charged them with all of the rent actually collected, and we think it constituted a reasonable charge when taken into consideration with all other circumstances. Assignment of errors by complainant and defendants in this connection will be overruled.

The decree of the Chancellor will be modified so as to charge defendants with $1,055 on the Thaxton note, instead of $1,002.50, and

by disallowing credits on the note to Judge Harwood in the amount of $465.30. After making these modifications in the decree it results that complainant is entitled to a recovery of six hundred eighty-six ($686.22) dollars and twenty-two cents. A decree will be entered in this court for that amount. Other errors not specifically treated will be overruled, and the decree of the Chancellor will be affirmed as modified.

Portrum and McAmis, JJ., concur.